Morphy, J.
The plaintiff having recovered a judgment in this case, for $444 28, took out an execution, under which he *312 levied on any moneys, rights or credits of the defendants, in the hands of G. B. Walton, and propounded interrogatories to him pursuant to the act of 1839. Walton answered, thathe had in his hands, belonging to the society, the sum of $1000, less the amount of $49 26, paid to Messrs. Norman, Steel & Co., on a judgment they had against the company; said sum of $1000, having been received by the respondent from the State Treasurer, on the warrant of the Governor of the State, given in favor of the defendants, under an appropriation made by the legislature, in 1838, to be expended for the sole purpose of purchasing books for their library. The Second Municipality of New Orleans intervened in the suit, and claimed the $1000 seized in the hands of Walton, alleging that, in June, 1837, the Council of the Municipality had loaned to the defendants $1000, for the purpose of purchasing books for their library, on their agreeing to repay this loan out of the moneys, that might thereafter be appropriated for their benefit, and on their executing their promissory note for the amount, in favor of the intervenors. The Attorney General intervened also, on behalf of the State. He avers, that the $1000, in dispute, justly belongs to the State of Louisiana, as it has been drawn from the treasury without legal authority ; that the legislature appropriated this money for the purchase of books for the Commercial Library of New Orleans, and that the same cannot be applied to any other purpose ; that the society has become extinct by the non-election of officers, and the failure of the objects for which it was incorporated ; and that the library, for which the appropriation was made, had been sold under execution for debt, before the money thus appropriated was drawn from the treasury, &c. There was a judgment below in favor of the State, from which the plaintiff, and the Municipality have appealed.
It appears, that in June, 1837, the defendants applied to,andobtain-ed from, the Council of the Second Municipality, a loan of $1000, to purchase books, which they agreed to repay out of an appropriation of money, which they expected the legislature to make in their fa* vor. They gave their note for the amount advanced, which, not having been paid at maturity, Was renewed in 1S38, for one year, and is now sued upon by the intervenors. The evidence shows that the defendants gave the Municipality an order on the State *313 Treasurer, but this order lias not been produced, nor is it in any way accounted for, or even mentioned in the petition of intervention. On the 7th of March, 1838, a law was passed, appropriating $1000, per cmnwn, for five years, for the purchase of books for the Commercial Library of New Orleans, to be drawn from the treasury'upon the warrant of the Governor, on the first Monday of June, in each year, and paid to the secretary of the company. In this act it was provided, that the members of both branches of the legislature, during the period for which the appropriation was made, should have free access to the library. It is shown, that three payments had been made under this law, when it was repealed on the 26th of March, 1842. In June following, the Governor gave his warrant in favor of the secretary of the society, for the $1000, in dispute; but the amount was not drawn out of the treasury until the 13th of January, 1845, long after the repeal of the act authorizing its payment. James B. Walton was president of the society in 1842, and continued to act as such until December of that year, when another election appears to have taken place; but neither the president, nor the board of directors, ever entered upon the discharge of their duties. In March, 1843, the books and other effects of the defendants were sold on execution, at the suit of one of their creditors, and from that period, the uses and purposes for which the corporation was created, seem to have been abandoned. By some means or other, the warrant issued by the Governor got into the possession of Norman, Steel & Co., who had obtained a judgment against the Library Society, for $49 26, before one of the city courts. James B. Walton, being ■apprized of the fact, redeemed the warrant by paying their claim, and on the 13th of January, 1S45, received its amount from the State Treasurer.
We can see on the record, no evidence of any transfer or assignment of the fund in dispute, to the Second Municipality. The debt of the defendants to them, was created before the appropriation was made by the State. Their order on the State treasury, if any was really given, can be considered only as a promise, or agreement on their part, to repay the loan out of the expected appropriation, which could be drawn only in the manner pointed out by law; but should this order be viewed as a transfer, or as- *314 signraent, it must have been intended to apply to the appropriation of 1838, not to that of 1842; and the transfer, moreover, could be binding as against third, persons, only in case notice had been given to the party who was to pay the money. As the case stands, the Municipality has shown no legal right or title to the fund seized. The claim of the plaintiff, is a fair and legitimate one against the defendants, being for his services as their librarian ; but the question is whether, under the circumstances of the case, it is to be satisfied out of the $ 1000, levied upon. It does not appear to us, that the library society can be considered as legally extinct, from the mere fact of their failing to make their annual elections, as there is nothing to prevent them from organizing anew, by appointing their officers; but it is evident, that since the sale of their library, they have abandoned all idea of so doing; and that, in point of fact, and to all practical intents and purposes, the body they formed may be looked upon as dissolved. The appropriation made by the State, was for the special purpose of buying books for the use of the library annually ; and it belonged to the society only for that particular purpose, and for none other. If, from any cause whatever, it cannot be so expended, it cannot and should not be otherwise applied. But even were it not so, the law making the appropriation, was repealed before the warrant of the Governor was made, in June, 1842, and it was paid only in January, 1845. Walton had no right or capacity to receive the money from the treasury, and there was no law in force directing its payment to him, or to any body else. Had the Treasurer been informed of all the facts connected with the issuing of the warrant, the disorganized state of the society, and the want of authority of J. B. Walton, who had long since ceased to be one of its officers, he would have been fully justified in refusing to pay such warrant. We think then, with the Judge below, that the money seized should be returned into the treasury, as its payment was unauthorized, and as it can no longer be applied to the uses and purposes for which it was originally appropriated.

Judgment affirmed.